CAROSELLA, Admr., et al., Appellees,

v.

CONWELL et al., Appellants.

[Cite as *Carosella v. Conwell* (2000), 138 Ohio App.3d 688.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 76546.

Decided July 31, 2000.

*Thomas G. Kelley* and *Kevin M. Ryan; Daniel J. Ryan*, for appellees.

*Mazanec, Raskin & Ryder Co., L.P.A., John T. McLandrich* and *Beverly A. Harris*, for appellants.

O'DONNELL, Presiding Judge.

Stephanie Conwell, M.D., and Acute Care Specialists appeal from a judgment of the common pleas court that granted a new trial to Suzanne and Vincent Carosella in connection with their medical malpractice claim for the wrongful death action of their seven-week old son, Vincent. Upon review, we have concluded the court abused its discretion in granting a new trial and, therefore, we reverse that determination and enter final judgment pursuant to the jury verdict for Conwell and Acute Care.

The record reveals that on the morning of February 1, 1996, Suzanne Carosella called Dr. Manmohan Kholsa, her pediatrician, because her infant son, Vincent, had a fever, experienced difficulty in breathing, and refused to take his bottle. Kholsa told her to take the child to the emergency room at Fairview General Hospital. She reported there at 7:20 a.m. As a result of a lumbar puncture performed on the child about 1:00 p.m. that afternoon, officials concluded the infant suffered from spinal meningitis. They admitted Vincent to the hospital and, eventually, the Carosellas took him to the Cleveland Clinic, where the doctors confirmed this diagnosis. Upon learning of the inability to cure his condition, the Carosellas took Vincent home, where sadly, he died on March 13, 1996.

Following his death, the Carosellas filed a wrongful death action alleging that Conwell and Acute Care negligently failed to perform necessary diagnostic and therapeutic measures during their care of Vincent in the emergency room at Fairview General Hospital. Following trial, the jury returned a verdict in favor of Conwell and Acute Care.

The Carosellas then moved for a new trial, claiming that the closing argument of the defense counsel had been improper, that Acute Care had been served with a subpoena but failed to appear at trial, and that Conwell's expert, Dr. Jonathan Singer, testified to matters that had not been provided prior to trial.

On May 24, 1999, the court granted a new trial, finding in its written opinion that during closing argument defense counsel had quoted from an article authored by Dr. Vincent Quagliarello, which had not been admitted into evidence; further finding that the Carosellas had been prejudiced by the actions of defense counsel in failing to produce a representative of Acute Care at trial; and also found that the opinion testimony offered by Singer resulted in unfair surprise to the Carosellas because it had not been provided to the Carosellas prior to trial.

Conwell and Acute Care now appeal, setting forth the following assignment of error for our review.

"Whether the trial court erred in granting plaintiffs–appellee's motion for new trial."

Conwell and Acute Care assert that the court abused its discretion when it granted a new trial in this case because they claim defense counsel did not read portions of a Quagliarello article during closing argument because Acute Care had not been obligated to appear at trial and had not been properly served with a subpoena and because Singer's expert opinion did not constitute unfair surprise.

The Carosellas, on the other hand, maintain that defense counsel read from a Quagliarello article and misrepresented its content that Acute Care had been properly served with a subpoena and failed to appear at trial and that Singer's opinion constituted unfair surprise because it had not been set forth in his report or in his deposition.

Thus, we are concerned with whether the trial court abused its discretion when it granted a new trial in this case.

In *Rohde v. Farmer* (1970), 23 Ohio St.2d 82, 52 O.O.2d 376, 262 N.E.2d 685, the court set forth the standard of review in its syllabus:

"1. Where a trial court is authorized to grant a new trial for a reason which requires the exercise of a sound discretion, the order granting a new trial may be reversed only upon a showing of abuse of discretion by the trial court.

"2. Where a new trial is granted by a trial court, for reasons which involve no exercise of discretion but only a decision on a question of law, the order granting a new trial may be reversed upon the basis of a showing that the decision was erroneous as a matter of law."

Further, Civ.R. 59(A) provides: "A new trial may be granted * * * upon any of the following grounds:

"* * *

"(2) Misconduct of the jury or prevailing party;

"(3) Accident or surprise which ordinary prudence could not have guarded against; * * *."

In this case, the trial court granted the motion for a new trial on three bases: (1) defense counsel misrepresented the expert opinion of Quagliarello, a plaintiff's expert witness in the case; (2) the Carosellas had been prejudiced by the actions of defense counsel in failing to produce a representative of Acute Care at trial in accordance with a judicial request to do so; and (3) Singer's opinion constituted unfair surprise because it had not been set forth in his report or in his deposition.

Further, we note that in *Bell v. Mt. Sinai Med. Ctr.* (1994), 95 Ohio App.3d 590, 643 N.E.2d 151, the court stated:

"Trial counsel is generally accorded considerable latitude in closing argument. * * * Only if the circumstances are of such a reprehensible and heinous nature as to constitute prejudice, will this court reverse a judgment based upon closing argument."

Regarding the allegation that during final argument defense counsel mischaracterized Quagliarello's opinion and read from an article that had not been admitted into evidence, our review of the transcript reveals that contrary to allegations by the Carosellas, during closing argument, defense counsel referred to a Quagliarello article, but read a portion of Quagliarello's cross-examination, not from any article authored by him. Secondly, while the trial court in its opinion asserts that the Quagliarello article had not been admitted into evidence, the transcript reflects that the court admitted it into evidence as plaintiff's Exhibit 10 at trial. We find nowhere in the transcript any portion of an article read by Conwell's counsel during final argument.

We are unable to document from the transcript any of the allegations levied against defense counsel, nor can we find support for the finding made by the trial court in its order to the effect that there had been misconduct during defense counsel's final argument, we conclude therefore, that the court abused its discretion in using this as a basis to grant a new trial.

█ Regarding the allegation that the Carosellas had been prejudiced by the actions of defense counsel and the absence of a representative of Acute Care at trial, we recognize that the Carosellas maintain Acute Care had been subpoenaed to appear at trial. However, it is not disputed that the subpoena for Acute Care had been delivered to defense counsel, not served upon Acute Care in accordance with Civ.R. 45, which provides that service of a subpoena shall be made by delivering a copy of it to the person, by reading it to him, or by leaving it at his usual place of residence.

Instead, having delivered the subpoena to defense counsel, the Carosellas claim that Acute Care's failure to appear at trial constituted unfair surprise. The civil

rules, however, do not authorize service of a subpoena upon trial counsel. And although the Carosellas argue that Civ.R. 5 authorizes service of a subpoena upon a party's counsel, that rule addresses service of pleadings, not the manner in which a subpoena must be served.

In its opinion, the trial court stated that the action of defense counsel in ignoring a direct request of the court to have a representative from Acute Care present for trial constituted attorney misconduct and a ground for granting a new trial. In our view, it does not.

Thus, we conclude that the court erred, as a matter of law, when it used this as a basis to grant a new trial.

■ Finally, regarding the allegation that Singer's opinion constituted unfair surprise, the record reveals that the court stated the following in its opinion:

"As the opinion provided by Dr. Singer during trial went to a critical issue in Plaintiffs' case, and Plaintiffs were not provided with the opinion in the doctor's report or otherwise prior to trial, the doctor's testimony resulted in unfair surprise to opposing counsel as counsel was not provided with ample opportunity to respond to the opinion and effectively cross-examine Dr. Singer. The unfair surprise resulted in prejudice to the Plaintiffs."

Our review of the transcript and the record reveals that the court confused the expert testimony of Dr. Mark Schleiss, another defense witness, with that of Dr. Singer. Singer's opinion contained in his written report reveals the following:

"Group B strip bacterium led to meningitis. Vincent had a hyperacute course with rapid clinical changes and imaging studies that document devastating injury. Group B strep meningitis may have an associated mortality of 25% and a morbidity that in some studies approaches 75%. Had there been administration of intravenous antibiotic agents at meningitic doses, within moments of Vincent's arrival to the emergency department, more likely than not, his rapidly evolving course would not have been altered. At best, he would have suffered significant neurologic devastation had he lived."

The Carosellas allege Singer stated that toxins produced by the breakdown of the bacteria would cause swelling in the brain that would have led to death despite the administration of antibiotics. The testimony elicited from Singer at trial does not contain this opinion. However, the expert opinion as to the toxins produced by bacteria had been offered by Schleiss, when he stated:

"Well, one of the really difficult aspects of treating meningitis in pediatrics is antibiotics don't limit the inflammatory process, the inflammatory process persists. In fact, almost paradoxically it might even get a little bit worse when your give antibiotics. When you give antibiotics the bacteria die. When they die they

break apart and their cell walls, that membrane that encases each individual microorganism will break loose and toxins and proteins that are within the bacteria now can fan the flames of that inflammatory response."

Accordingly, we conclude the court abused its discretion in using this as a basis to grant a new trial because the court mistakenly attributed Schleiss' opinion to Singer.

Therefore, this assignment of error is well taken, the judgment of the trial court is reversed, and final judgment is entered in accordance with the jury verdict returned in favor of Conwell and Acute Care.

*Judgment reversed.*

SPELLACY and JAMES D. SWEENEY, JJ., concur.